**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J & J Sports Productions, Inc., | ) |
| Plaintiff, | ) No. CV-14-02007-PHX-PGR |
| vs. | ) |
| Ana Mejia, individually and d/b/a Mariscos El Cid, | ) <u>ORDER</u> |
| Defendant. | ) |

Pending before the Court is plaintiff J & J Sports Productions, Inc.'s Application for Default Judgment by the Court (Doc. 16), wherein the plaintiff seeks the entry of default judgment against defendant Ana Mejia, individually and d/b/a Mariscos El Cid.  Having reviewed the record, the Court finds that the default judgment application should be granted pursuant to Fed.R.Civ.P. 55(b)(2) to the extent that the Court will award the plaintiff the sum of $ 7,000.00  in total damages, as well as its recoverable costs and reasonable attorney's fees.[1]

---

[1]     The Court finds that an evidentiary hearing pursuant to Fed.R.Civ.P. 55(b)(2) is not necessary for the purpose of determining the amount of damages to which the plaintiff is entitled as all of the damages the Court is willing to impose are ascertainable from the record before it.

Background

The complaint, filed on September 11, 2014, alleges that defendant Mejia showed the pay-per-view program, *"The One" Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Champion Fight Program* (the "Program"), on September 14, 2013, at her restaurant Mariscos El Cid, located at 4320 W. Thomas Rd., Phoenix, Arizona 85031, without having purchased a commercial license to do so from the plaintiff, which held the exclusive nationwide commercial distribution (closed-circuit) rights to the program. The complaint alleges two claims: violation of 47 U.S.C. § 605 (Count I) and violation of 47 U.S.C. § 553 (Count II).  The record establishes that defendant Mejia was personally served at her restaurant on December 8, 2014.  The defendant never responded to the complaint, and the Clerk of the Court entered default against the defendant on January 5, 2015 (Doc. 14) pursuant to the plaintiff's application.  The plaintiff filed its pending default judgment application on January 16, 2015, and served the application on the defendant.

Discussion

The Court concludes that the entry of default judgment is appropriate under the factors set forth in Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986), for the reasons set forth by the plaintiff in its application.

Although the complaint alleges federal claims pursuant to 47 U.S.C. § 553 and § 605, the plaintiff's default judgment application in effect only seeks liability and damages under § 605, which prohibits the unauthorized interception and distribution of communications.  The complaint alleges in part in Count I, the § 605 claim, that the defendant "did unlawfully intercept, receive, publish, divulge, and/or exhibit the *Program* at the time of its transmission" at the defendant's commercial establishment, and that she did so "willfully and for purposes of direct and/or indirect

- 2 -

commercial advantage and/or private financial gain." The general rule of law is that upon default all well-pleaded factual allegations of the complaint regarding liability, but not those relating to damages, are taken as true. DIRECTV, Inc. v. Huynh, 503 F.3d 847, 851 (9th Cir.2007); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir.1977). The Court concludes that the plaintiff's allegations regarding § 605 liability, taken as true based on the entry of default, are sufficient to entitle the plaintiff to an award of damages.

Section 605 provides for statutory damages per violation "of not less than $1,000 or more than $10,000, as the court considers just." § 605(e)(3)(C)(i)(II). Section 605 further permits an additional award of enhanced damages of up to $100,000 if "the court in its discretion" determines that the defendant willfully violated the statute "for purposes of direct or indirect commercial advantage or financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The plaintiff seeks an award of $8,000 in statutory damages and $37,000 in enhanced statutory damages, for a total statutory damages award of $45,800.

As to the facts relevant to the issue of § 605 damages, the plaintiff's investigator, Amanda Hidalgo, states the following in her affidavit: that she spent twelve minutes in the defendant's establishment on the evening of September 14, 2013, that she paid a $10.00 cover charge to get in, that she did not order anything to drink, that the establishment had four television sets inside it, in sizes of 37", 40", 50" and 80", that three of the televisions were playing a very poor quality stream of a fight between Ashley Theophane and Pablo Cesar Cano[2], that there were sixteen patrons in the establishment, that the establishment had a capacity of approximately

---

[2]

The plaintiff has submitted evidence establishing that the Theophane v.Cano fight was an undercard bout that was shown as part of the Program.

1   100 people, and that the establishment was advertising the Mayweather v. Canelo

2   fight through three large posters, one of which was a very large poster taped to the

3   side of a SUV that was parked directly in front of the establishment. The plaintiff has

4   also submitted evidence that it would have cost the defendant $2,200 to purchase

5   a license to legally show the Program.

6       As the plaintiff correctly states, the Court has considerable discretion in

7   awarding § 605 damages.  Based on the evidence presented, the Court concludes

8   that statutory damages pursuant to § 605(e)(3)(C)(i)(II) in the amount of $3,500 is

9   a just award.

10       The Court further concludes that the plaintiff is entitled to a discretionary

11   award of enhanced damages because the evidence shows that the defendant

12   showed the program for commercial advantage or for private financial gain. In light

13   of the supporting affidavit of Joseph M. Gagliardi, the plaintiff's president, the Court

14   accepts that the defendant must have taken specific wrongful actions in order to

15   intercept the plaintiff's encrypted program.[3]  The plaintiff has also presented other

16   evidence of the defendant's willfulness in that the establishment advertised the fight,

17   required patrons to pay a cover charge, and had three televisions of significant size

18   showing the Program.  *See* Kingvision Pay-Per-View, Ltd. v. Guzman, 2008 WL

19   1924988, at *3 (D.Ariz. April 30, 2008) ("Courts use a variety of factors in

20

21         [3]

22       While Mr. Gagliardi states in his affidavit that "Defendant's patrons purchased food and/or drinks while viewing the Program," there is no admissible

23   evidence of that in the record as Mr. Gagliardi was not present at the defendant's restaurant during the telecast and Ms. Hidalgo's affidavit does not state that she

24   witnessed any such purchases or made any herself.  Mr. Gagliardi also states that the defendant's pirating of the telecast has resulted in the plaintiff losing customers

25   and having its goodwill and reputation damaged, but there is no evidence quantifying

26   any such losses.

1    determining whether a defendant's conduct is subject to enhanced damages for

2    willfulness under § 605, including prior infringements, substantial unlawful monetary

3    gains, significant actual damages to the plaintiff, the defendant's advertising of the

4    broadcast, and the defendant's charging a cover charge or premiums for food and

5    drinks during the broadcast.") In light of the evidence, the Court will award $3,500

6    in enhanced damages pursuant to § 605(e)(3)(C)(ii).

7         The plaintiff also requests in its complaint and in its default judgment

8    application that it be awarded its reasonable attorney's fees and relevant costs

9    pursuant to § 605.  Section 605(e)(3)(B)(iii) provides that the Court "shall direct the

10   recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved

11   party who prevails."  So that it will have some basis on which to determine the

12   reasonableness of any requested fee request, the Court will require the plaintiff to

13   submit an itemized list of attorney's fees, wherein it (1) details the actual time

14   expended by task (taking into account the use by the plaintiff's counsel of any

15   boilerplate pleading and motion-related forms he uses in this type of action), the

16   hourly rate charged, and the identities and experience of the people for which

17   reimbursement is requested, and (2) details its costs.  Therefore,

18        IT IS ORDERED that plaintiff's J & J Sports Productions, Inc.'s Application for

19   Default Judgment by the Court (Doc. 16) is granted pursuant to Fed.R.Civ.P.

20   55(b)(2) to the extent that the plaintiff is awarded the sum of $7,000.00 from

21   defendant Ana Mejia.  The Clerk of the Court shall enter judgment for the plaintiff

22   accordingly.

23        IT IS FURTHER ORDERED that the plaintiff shall file its request for attorney's

24   /   /   /

25   /   /   /

26

- 5 -

1   fees and costs no later than May 28, 2015.

2        DATED this 12th day of May, 2015.

3

4

5        Paul G. Rosenblatt
         United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26